UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SHERMAN RIVERS,

         Petitioner,

  -against-

JOSEPH T. SMITH,

         Respondent.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

13-CV-4786 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Petitioner Sherman Rivers's pro se Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (the "Petition"). (Pet. (Dkt. 1).) Petitioner challenges his 2007 New York State conviction for multiple counts of arson. On April 28, 2014, Petitioner moved to remand this action to state court in light of a recent change in state law. (Mot. to Remand (Dkt. 13).) Respondent Joseph T. Smith ("the State") opposes both the Petition and the Motion to Remand. (State Resp. to Order to Show Cause (Dkt. 7); May 25, 2014, Ltr. (Dkt. 14).) For the reasons set forth below, the Motion to Remand is DENIED and the Petition is DISMISSED.

## I. BACKGROUND

### A. The State Criminal Trial

Petitioner "was charged with recruiting others to set two fires" in May 2004 "in a four-story brownstone at 408 Greene Avenue" (the "Property"). (Pet'r's Br. on Direct Appeal ("Pet'r App. Br.") (Dkt. 9-1) at 6.) The state prosecutor alleged that the fires were intended to clear the Property of tenants as part of Petitioner's plot to fraudulently sell the Property, which he did not own. (Id. at 12.) Except as otherwise indicated, the following summary is drawn

1

from Petitioner's own account of the evidence presented at trial, as described in his brief on direct appeal. Citations to the trial record are omitted throughout.

### 1. The Plot to Fraudulently Sell the Property

A key witness in the prosecution's case was Hugh Anthony Prescod, a friend of Petitioner's who participated in the arsons and ultimately became a State cooperator. (Id. at 10-11.) Prescod testified that in early 2004, Petitioner devised a plan to fraudulently sell the Property. (Id. at 12.) The Property was owned by Leroy Weekes, who was incarcerated at the time. (Id.) Weekes's wife, Victoria Mammon, was a paramour of Petitioner's, and Petitioner and Prescod together forged a deed to the Property in Mammon's name. (Id.; see also id. at 7-8, 8 n.3 (discussing testimony from a notary public who accepted a bribe to help Petitioner notarize the forged deed).) Mammon executed a power of attorney that enabled Petitioner to conduct real estate transactions on her behalf. (Id. at 8.) The Property was inhabited, but Petitioner negotiated a contract of sale specifying that the Property would be delivered vacant. (Id.)

### 2. The Fires at the Property

Petitioner instructed Prescod to set a fire inside the Property to drive the tenants out. (Id. at 12.) Prescod agreed because Petitioner had been letting him live rent-free in a building that Petitioner occupied and managed. (Id.) On May 25, 2004, Petitioner "directed [Prescod] to start the fire that night, gave him gasoline and keys to the [Property], and accompanied him to Greene Avenue." (Id. at 13.) "Following [Petitioner's] instructions, Prescod poured the gasoline on the stairs leading up from the basement" and set it aflame. (Id.) Prescod was "pursued and threatened" by some of the Property's occupants, so he fled the premises and "threw the keys away as he fled." (Id. at 13-14.) Meanwhile, Petitioner called 911 from across the street and

2

reported an assault; he did not mention the fire.[1] (Id. at 13.) The fire did not burn as vigorously as anticipated, and certain tenants remained in the Property. (Id. at 14.)

May 25 was the scheduled closing date for sale of the Property. The real estate attorney testified that the intended buyer "became 'agitated' upon being informed that the property was not [yet] vacant, but [Petitioner] promised that it would be delivered vacant after the closing." (Id. at 8.)

Five days later, on May 30, 2004, Prescod witnessed the following series of events. Petitioner asked his cousin "for help setting another fire," and later received a phone call confirming that his cousin's collaborators had thrown a Molotov cocktail through a window at the Property. (Id. at 14.) Petitioner then paid the collaborators $1,000 each for their assistance. (Id.) Like the first fire, the second fire failed to clear the building of occupants, but Petitioner and his cousin were later able to drive out the remaining tenants so the Property would be unoccupied, as promised. (Id.)

### 3. The Investigation and Prescod's Cooperation

New York fire marshals investigated the Property and concluded that both fires were the result of flammable liquids, and further, that the fires were likely not a product of natural causes or mere accident. (Id. at 17-20.) A few months later, a fire marshal approached Prescod with questions about Petitioner. (Id. at 10.) Over a series of conversations in late 2004, Prescod ultimately confessed his own participation in the fires and agreed to cooperate with agents from the United States Bureau of Alcohol, Tobacco, and Firearms ("ATF") in their investigation. (Id. at 10-11, 15.)

---

[1] The prosecution submitted into evidence a recording of the 911 call, and Petitioner's voice was identified by both Prescod and the real estate attorney who facilitated the sale of the Property. (Pet'r App. Br. at 13.)

3

In January 2005, Prescod agreed to wear a body wire and have a conversation with Petitioner about the fires at the Property, and about a proposal—fabricated in conjunction with ATF agents—for Petitioner to accept payment in exchange for setting another fire at a warehouse. (Id. at 11, 15.) During that conversation, Petitioner stated that he and Prescod had "burnt" the Property, and mentioned two separate fires on different floors of the Property. (Resp't's Br. on Direct Appeal ("State App. Br.") (Dkt. 9-2) at 40 (citations to the trial record omitted throughout); see also Pet'r App. Br. at 15-16.) Petitioner "also disparaged Prescod's abilities as an arsonist" and "remarked that Prescod had 'lost the keys and everything,'" thereby corroborating Prescod's account of the May 25 fire. (State App. Br. at 30.)

### 4. Petitioner's Conviction

On April 17, 2007, a jury in the Supreme Court, Kings County (the "Trial Court") convicted Petitioner on three counts of first-degree arson: one for the fire on May 25, one for the fire on May 30 based on the expectation of pecuniary profit, and an additional count for the May 30 fire based on the use of an incendiary device. (Pet'r App. Br. at 28-29.) The Trial Court sentenced Petitioner to one prison term of 20 years to life for the May 25 count, to run consecutively with two concurrent prison terms of 15 years to life for the May 30 counts.[2] (Id. at 42-43.)

### B. Petitioner's Direct Appeal

Petitioner appealed his conviction through appointed counsel and asserted two evidentiary challenges. Petitioner first argued that he was "denied a fair trial" because the

---

[2] On direct appeal, the Appellate Division noted that the Trial Court did not explicitly state "whether the two sentences imposed on the counts relating to the fire on May 30, 2004, were to run concurrently with each other, as, in fact, the Penal Law requires." People v. Rivers, 906 N.Y.S.2d 270, 271 (N.Y. App. Div. 2010) (citations omitted). "[T]he commitment and sentence sheet state[d] that all three sentences were to run consecutively," however, so the Appellate Division vacated the sentences relating to the May 30 fires and remitted for "clarification of the discrepancy and thereafter resentencing on those convictions." Id.

4

prosecution introduced evidence of Petitioner's prior bad acts and associations, despite Trial Court rulings that prohibited such evidence. (Pet'r App. Br. at 2; see also id. at 3-4.) Second, Petitioner argued that the Trial Court improperly permitted expert witnesses to state their opinion that the fires were "intentionally set." (Id. at 2; see also id. at 5-6.) The Appellate Division and the New York Court of Appeals rejected Petitioner's arguments and affirmed the conviction, as discussed below in Section III.A. See People v. Rivers, 906 N.Y.S.2d 270 (N.Y. App. Div. 2010) (hereinafter "Rivers I"); People v. Rivers, 960 N.E.2d 419 (N.Y. 2011) (hereinafter "Rivers II").

### C. Petitioner's State Collateral Proceedings

After Petitioner's conviction was affirmed, he filed a pro se motion in the Trial Court to vacate his judgment under N.Y. Crim. Proc. Law § 440.10 (the "Motion to Vacate"). (See Mot. to Vacate (Dkt. 9-3).) Petitioner argued, first, that he was denied effective assistance of counsel at trial based on defense counsel's failure to investigate, interview, or call certain potential witnesses. (Id. at 33.) Petitioner also asserted a claim of "actual and factual innocence," and argued that "his convictions of arson are [therefore] in violation of the 'cruel and unusual punishment clauses'" of the state and federal constitutions. (Id. at 43-44.) The Trial Court denied Petitioner's Motion to Vacate, as discussed below in Sections III.B and C. People v. Rivers, 2012 N.Y. Misc. LEXIS 6013, 2012 N.Y. Slip Op. 33139(U) (Sup. Ct. Kings Cty. Jan. 24, 2012[3]) (hereinafter "Rivers III").[4] On June 25, 2013, the Appellate Division denied Petitioner's request for leave to appeal. (Barall Aff. in Opp'n to Pet. (Dkt. 7 at ECF p.1) ¶ 21.)

---

[3] "Although the court's decision is dated January 23, 2012, logic dictates that it actually must have been issued on January 23, 2013, and the records of the Kings County District Attorney's Office indicate that the decision and order was received by the Office on January 23, 2013." (Barall Aff. in Opp'n to Pet. (Dkt. 7 at ECF p.1) at 9 n.2.)
[4] The Trial Court's opinion denying the Motion to Vacate was also filed on the docket for these habeas proceedings. (See Decision & Order Denying Mot. to Vacate J. (Dkt. 9-4 at ECF p.43).)

### D. The Federal Habeas Petition

Petitioner timely initiated this pro se federal habeas action on August 21, 2013.[5] (Pet.) The Petition restates the two evidentiary claims from Petitioner's direct appeal and the two additional claims from his state collateral proceedings. (Id. at ECF p.3; see also Pet'r's Reply Mem. (Dkt. 12 at ECF p.5) (stating that Petitioner relies on the briefs from his direct appeal and state collateral proceedings).)

## II. STANDARDS FOR STATE HABEAS PETITIONS

District courts are empowered to review applications for a writ of habeas corpus on behalf of a person in state custody only insofar as the petitions assert violations of the United States Constitution or other federal law. 28 U.S.C. § 2254(a). A state habeas petitioner must generally meet three requirements to obtain relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).

### A. Exhaustion

A state habeas petition "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). To satisfy that requirement, "the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." Rush v. Lempke, 500 F. App'x 12, 14

---

[5] Federal habeas petitions are subject to a one-year statute of limitations, which is tolled during the pendency of any state collateral proceedings. 28 U.S.C. § 2244(d). In this case, the one-year period ran from "the date on which the judgment became final." Id. § 2244(d)(1). The Court of Appeals affirmed Petitioner's conviction in Rivers II on November 22, 2011. Petitioner's conviction then became "final" on February 20, 2012, after the expiration of Petitioner's 90-day period for seeking certiorari to the United States Supreme Court. See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001); Sup. Ct. R. 13(1). Petitioner's deadline was thus February 20, 2013. That deadline was tolled, however, during the pendency of his state collateral proceedings, from October 12, 2012 (the date he filed the Motion to Vacate), to June 25, 2013 (the date he was denied leave to appeal the Trial Court's denial). (See Barall Aff. in Opp'n to Pet. ¶¶ 19, 21 (confirming the relevant dates).) Tolling those 256 days yields a deadline of November 3, 2013. Petitioner was therefore well within the statute of limitations when he filed the Petition on August 21, 2013.

6

(2d Cir. 2012) (summary order) (quoting Daye v. Attorney Gen., 696 F.2d 186, 191 (2d Cir. 1982) (en banc)).

### B. Procedural Default

"A federal habeas court . . . may not review a related state court decision if that decision rests on a state law ground that is 'independent of the federal question and adequate to support the judgment.'" Fulton v. Graham, 802 F.3d 257, 262 (2d Cir. 2015) (quoting Cone v. Bell, 556 U.S. 449, 465 (2009)). "This prudential rule applies 'whether the state law ground is substantive or procedural.'" Id. (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).

### C. AEDPA Deference

If a state court reached the merits of a federal claim asserted in a Section 2254 habeas petition, AEDPA requires the federal habeas court to apply a highly deferential standard of review. Habeas relief may only be granted if the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the first prong, the words "clearly established federal law" refer to "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). The central question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002) (internal quotation marks, alterations, and emphases omitted). A federal court should not displace a state court's ruling on the merits so long as "fairminded jurists could

disagree on the correctness of the state court's decision." Woods v. Etherton, — U.S. —, 136 S. Ct. 1149, 1151 (2016) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)).

With regard to the second AEDPA prong, "a federal court is required to presume that a state court's factual findings are correct and to place on the petitioner the burden of rebutting this presumption by clear and convincing evidence." Fulton, 802 F.3d at 262 (citing 28 U.S.C. § 2254(e)(1)).

## III. DISCUSSION

All four arguments in the Petition were previously considered by state courts, either on direct appeal or in the state collateral proceedings. See supra Sections I.B-D. The court therefore finds that Petitioner has satisfied the exhaustion requirement with regard to all four claims. See 28 U.S.C. § 2254(b)(1). The court finds, however, that each claim fails under either a procedural bar or AEDPA's deference standard. Therefore, the Petition must be dismissed.

### A. Evidentiary Challenges

The first two arguments in the Petition relate to state evidentiary rulings. Petitioner argues that he was denied a fair trial because (1) the prosecution impermissibly introduced evidence of Petitioner's prior acts and associations, and (2) the expert testimony as to the causes of the fires impermissibly "invaded the province of the jury." (Pet. at ECF p.3.) The court finds that both claims must be dismissed on grounds of procedural default.

#### 1. Legal Standard

Generally, a federal habeas court may not review "a state court's evidentiary rulings," even if the rulings were "erroneous under state law." McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 72-73 (2d Cir. 2011) (summary order) (citing Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006)). A federal habeas court may only intervene when "the challenged evidentiary rulings . . . affect[ed] the fundamental fairness" of the state

8

proceedings, thereby undermining the petitioner's federal due process rights. Id. at 73 (citing DiGuglielmo v. Smith, 366 F.3d 130, 137 (2d Cir. 2004) (per curiam)). Fundamental unfairness exists when "the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it." Id. (alterations omitted) (quoting Collins v. Scully, 755 F.2d 16, 19 (2d Cir. 1985)).

2. Analysis

a. *Evidence of Petitioner's Prior Acts and Associations*

New York's Molineux doctrine "forbids an inference of guilt from evidence probative of no more than predisposition to a kind of behavior." People v. Cortez, 4 N.E.3d 952, 958 (N.Y. 2014) (citations omitted); see also People v. Molineux, 61 N.E. 286 (N.Y. 1901). Petitioner argues that he was "denied a fair trial by the prosecutor's repeated failure to respect the letter and spirit" of the Trial Court's Molineux rulings, which restricted certain types of evidence. (Pet. at ECF p.3.) In particular, the prosecution elicited evidence of an arson attempt for which Petitioner was never charged, as well as testimony linking Petitioner to violent acts, firearm possession and use, the Nation of Islam, and a motorcycle gang. (Pet'r App. Br. at 3-4.)

The Court of Appeals acknowledged that the prosecutor "clearly violated the trial court's Molineux rulings," but determined that, "if defendant was prejudiced at all" by the contested evidence, "such prejudice was minimal." Rivers II, 960 N.E.2d at 422. Each time Petitioner challenged "an alleged violation of the court's Molineux rulings, the trial court . . . considered the arguments of the parties [and] concluded that what happened did not rise to the level of a mistrial." Id. The Trial Court also "provided further instruction to counsel to refrain from making statements regarding improper topics," and issued clarifying instructions to the jury "to minimize the impact of arguably improper testimony or prosecutorial statements during the

9

trial." Id. The Court of Appeals further found that any Molineux violations were "harmless" because the "evidence against [Petitioner], from his own taped admissions, and testimony of [Prescod,] who set the first fire at [Petitioner's] behest, overwhelmingly established [Petitioner's] guilt of the crimes charged." Id.

This court agrees with the Court of Appeals that "there was no reasonable possibility" that the contested evidence "affected the jury's verdict, or that the absence of such errors would have led to an acquittal." Id. It is regrettable that the prosecution failed to comply with the Trial Court's evidentiary rulings. Nonetheless, the court finds that Petitioner has failed to show that the contested evidence had a meaningful effect on the fundamental fairness of the state proceedings. Therefore, the claim is precluded from federal habeas review.

### b. Testimony as to the Cause of the Fire

In Petitioner's second evidentiary challenge, he argues that the Trial Court improperly allowed fire marshals to testify "that the fires were intentionally set and could not have resulted from natural or accidental causes." (Pet. at ECF p.3.) In Petitioner's eyes, this testimony "invaded the province of the jury and violated [Petitioner's] right to a fair trial." (Id.) Petitioner's argument on direct appeal relied on the now-defunct Grutz rule, which provided that "a fire marshal may not brand a fire 'suspicious,' give an opinion as to its intentional origin, or draw conclusions from the facts when the jury is capable of understanding and interpreting those facts." (Pet'r App. Br. at 48 (discussing the rule articulated in People v. Grutz, 105 N.E. 843 (N.Y. 1914)).)

In deciding Petitioner's appeal, however, the Court of Appeals "put the Grutz proposition to rest," finding that it was unnecessary to maintain a rule specific to forensic expertise in arson cases. Rivers II, 960 N.E.2d at 423. When trial courts must decide "what an arson expert may tell the jury in a particular case," the courts may rely on New York's "well-established body of

10

case law concerning the admissibility and limits of expert testimony" in general. Id. Turning to the facts of Petitioner's case, the Court of Appeals noted that "the evidence adduced at trial conclusively established, apart from the expert testimony, that the subject fires were intentionally set." Id. The expert testimony was arguably "unnecessary," but "any error was harmless[] because the evidence of defendant's guilt was overwhelming and there was no significant probability that the jury would have acquitted defendant" had the expert testimony been withheld. Id.

Petitioner's habeas filings do not address the Court of Appeals's decision on this matter. The brief Petition incorporates Petitioner's appellate brief, and thus appears to rely entirely on the now-abrogated Grutz rule. Petitioner does not cite any federal authority aside from an unelaborated reference to a constitutional "due process right to a fair jury trial." (Pet'r App. Br. at 47; see also Pet. at ECF p.3.) Petitioner has thus failed to articulate any basis for finding "fundamental unfairness"—or, indeed, any cognizable violations of state or federal law—based on the expert testimony admitted at trial. This claim is therefore precluded from federal habeas review on grounds of procedural default.

## B. Ineffective Assistance of Counsel

The Petition restates the claim of ineffective assistance of counsel that first appeared in Petitioner's pro se Motion to Vacate, namely that trial counsel was constitutionally ineffective based on a failure to investigate, interview, or call witnesses who were "germane to [Petitioner's] defense." (Pet. at ECF p.3.) The court finds that Petitioner's arguments fail to overcome AEDPA's deferential standard of review. Petitioner's claim must therefore be dismissed.

### 1. Legal Standard

Petitioner's argument was adjudicated on the merits by the Trial Court on collateral review. Rivers III, 2012 N.Y. Misc. LEXIS 6013, at *5-7. Petitioner therefore bears the burden

11

of showing that the Trial Court unreasonably applied clear Supreme Court precedent. See 28 U.S.C. § 2254(d)(1). The Supreme Court has outlined a two-step inquiry for determining whether counsel was unconstitutionally ineffective. First, Petitioner must establish "deficiency" by showing that "'counsel's representation fell below an objective standard of reasonableness.'" Porter v. McCollum, 558 U.S. 30, 38 (2009) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). In this analysis, the court "must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Lugo v. LaValley, 601 F. App'x 46, 48 (2d Cir. 2015) (summary order) (quoting Strickland, 466 U.S. at 689).

Second, Petitioner must show "prejudice" by establishing "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Porter, 558 U.S. at 38-39 (quoting Strickland, 466 U.S. at 694). The relevant "inquiry is not whether counsel's error had 'some conceivable effect on the outcome of the proceeding,' but whether it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Lugo, 601 F. App'x at 48 (quoting Strickland, 466 U.S. at 686).

2. Analysis

Petitioner lists several individuals who allegedly had knowledge relevant to his defense, and argues that any minimally effective attorney would have investigated those leads and called the individuals to testify at trial. (Mot. to Vacate at 36-43.) In opposing the Motion to Vacate, the State submitted an affidavit that was based, in part, on a "telephone conversation with [Petitioner's] trial counsel, Terence J. Sweeney," as well as documents provided by Sweeney. (See Barall Aff. in Opp'n to Mot. to Vacate (Dkt. 9-4 at ECF p.2) ¶ 1; see also id. ¶¶ 16-20.) Sweeney was aware of Petitioner's arguments because Petitioner had served Sweeney with a copy of the Motion to Vacate. (Id. at 8 n.4.)

12

Sweeney explained that, based on certain representations by Petitioner and Petitioner's associates, Sweeney had "concluded that he could not take everything that [Petitioner] told him at face value." (Id. ¶ 19.) He investigated many of the individuals on Petitioner's list, but decided that some of them did not merit a full interview because they did not appear to have any useful information. (See id. ¶ 20.) Sweeney did interview others, but ultimately decided not to call them as witnesses because he found them lacking in credibility. (Id.) The remaining individuals on Petitioner's list were investigators who themselves interviewed potential witnesses on behalf of either the prosecution or defense counsel. (See id. ¶¶ 20(b) (discussing Fire Marshals Caruso and Pliska), 20(d) (noting that David Walker was defense counsel's investigator).) The State argued that these individuals had no direct knowledge of the case, and that any testimony based on statements from the people they interviewed would be impermissible hearsay. (See State Mem. of Law in Opp'n to Mot. to Vacate (Dkt. 9-4 at ECF p.13) at 11.)

On collateral review, the Trial Court found that Petitioner failed to satisfy Strickland's required showing of "an inexplicable prejudicial course of conduct on the part of trial counsel." Rivers III, 2012 N.Y. Misc. LEXIS 6013, at *6. "For each claim raised by [Petitioner,] there are equally plausible explanations why trial counsel proceeded in the manner which he did at the time of the trial." Id. at *6-7. The Trial Court further found that Petitioner failed to show prejudice under Strickland's second prong, noting the findings from both state appellate courts that "the evidence presented at trial overwhelming[ly] established [Petitioner's] guilt." Id. at *7.

This court finds no basis for concluding that the Trial Court's opinion was "contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent.

13

28 U.S.C. § 2254(d)(1). Petitioner has failed to overcome the deference owed to the Trial Court's reasoning under AEDPA. Petitioner's claim must therefore be dismissed.

**C. Actual Innocence**

Petitioner's final claim is that he is innocent of the arson charges, and that his convictions therefore violate the Eighth Amendment's prohibition on cruel and unusual punishment. (Pet. at ECF p.3.) After filing the Petition, Petitioner moved to remand this action to state court in light of recent changes in state law relating to "actual innocence" claims in state collateral proceedings. (Mot. to Remand.) For the reasons below, the court denies the Motion to Remand and finds that Petitioner's "actual innocence" argument does not entitle him to federal habeas relief.

1. The Motion to Remand

While Petitioner's federal habeas claim was pending, the New York Appellate Division held that, as a matter of state constitutional law, "a freestanding claim of actual innocence" may be addressed in state collateral proceedings under N.Y. Crim. Proc. Law § 440.10. People v. Hamilton, 979 N.Y.S.2d 97, 108 (N.Y. App. Div. 2014). Petitioner requested a remand on the grounds that he may be "entitled to the retroactive application" of the Hamilton decision. (Mot. to Remand at 1.) The court declines to remand the case.

Petitioner included an "actual innocence" claim in his Motion to Vacate. (See Mot. to Vacate at 43-45.) The Trial Court denied that claim in Rivers III, and the Appellate Division denied Petitioner leave to appeal. (Barall Aff. in Opp'n to Pet. ¶¶ 20-21.) Petitioner's "actual innocence" claim is therefore exhausted under 28 U.S.C. § 2254(b)(1) and the claim is now ripe for federal habeas review. A subsequent change in state law is irrelevant for the purposes of this court's review under Section 2254, which is limited to alleged violations of federal law. Id. § 2254(a); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("It is not the province of a

14

federal habeas court to reexamine state-court determinations on state-law questions."). In any event, a habeas petition cannot be remanded to state court because Section 2254 vests exclusive jurisdiction in the federal courts. 28 U.S.C. § 2254(a). Even if Petitioner is correct that he is entitled to retroactive application of a change in the law governing New York's collateral review procedures, the appropriate forum for such relief is the state court system, not a federal habeas court. The court therefore denies Petitioner's Motion to Remand.

### 2. Petitioner's Habeas Claim

#### a. *Legal Standard*

The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, — U.S. —, 133 S.Ct. 1924, 1931 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)). "[A] credible showing of actual innocence may," however, "allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." Id. The Supreme Court has indicated that the burden of establishing "a hypothetical freestanding innocence claim" would require even "more convincing proof of innocence" than for this "gateway" procedural exception. House v. Bell, 547 U.S. 518, 555 (2006).

The "gateway" exception is limited to instances where the claim of innocence is both "'credible' and 'compelling.'" Rivas v. Fischer, 687 F.3d 514, 541 (2d Cir. 2012) (quoting House, 547 U.S. at 521). A claim is "credible" when it is "supported by 'new reliable evidence . . . that was not presented at trial.'" Id. (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). A claim is "compelling" when the petitioner demonstrates "that[,] more likely than not[,] any reasonable juror would have reasonable doubt" as to the petitioner's guilt. Id. (quoting House, 547 U.S. at 538).

15

*b. Analysis*

Petitioner has failed to satisfy even the "gateway" standard, and would therefore be unable to satisfy the standard for a freestanding "actual innocence" claim, even assuming such a claim were permissible. Petitioner has not alleged any "new reliable evidence," such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," as required under Rivas, 687 F.3d at 541. Rather, Petitioner rests his innocence claim on the same list of potential witnesses discussed in his claim of ineffective assistance of counsel. See supra Section III.B. Petitioner's proffered evidence of innocence is therefore not "new," because these individuals were known to defense counsel at the time of trial. See, e.g., Boone v. United States, No. 02-CR-1185 (JMF), 2015 WL 5139143, at *3 (S.D.N.Y. Sept. 1, 2015). Further, the proffered evidence does not appear to be "reliable," given defense counsel's explanation that he declined to call the most ostensibly helpful witnesses precisely because he found them unreliable. In any event, the court agrees with the Trial Court's ruling on collateral review that any testimony from these individuals would likely not have changed the outcome of the trial in light of the overwhelming evidence of Petitioner's guilt. Rivers III, 2012 N.Y. Misc. LEXIS 6013, at *7. Petitioner has thus failed to show that his proffered evidence is "compelling." In conclusion, the court finds that, to the extent that federal habeas courts recognize freestanding claims of "actual innocence," Petitioner has failed to plead such a claim.

## IV. CONCLUSION

For the reasons stated above, Petitioner's Motion to Remand (Dkt. 13) is DENIED and the Petition (Dkt. 1) is DISMISSED. No Certificate of Appealability shall issue because Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as

required under 28 U.S.C. § 2253(c)(2). The Clerk of Court is respectfully directed to close the case. The Clerk is further directed to mail a copy of this order to Petitioner.

SO ORDERED.

Dated: Brooklyn, New York
November 30, 2016

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge